```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                                 13 Cr. 811

 5   MARTIN AVALO,

 6                    Defendant.

 7   ------------------------------x

 8                                                 New York, N.Y.
                                                   September 18, 2015
 9                                                 2:00 p.m.

10
     Before:
11
                     HON. ANDREW L. CARTER, JR.,
12
                                                   District Judge
13

14                            APPEARANCES

15   PREET BHARARA
          United States Attorney for the
16        Southern District of New York
     JASON MASIMORE
17        Assistant United States Attorney

18   LAW OFFICES OF LAWRENCE K. FEITELL
          Attorneys for Defendant
19   BY:  DAVID S. GREENFIELD
          BENNETT MORRIS
20

21

22

23

24

25
```

1     (Case called)

2     THE COURT: Good afternoon. Just to recap where we
3 were the last time -- correct me if I'm wrong -- I had already
4 imposed a horizontal departure from criminal history category V
5 to criminal history category IV resulting in a total offense
6 level that has a range of 70 to 87 months.

7     I had heard from both counsel. I heard from
8 Mr. Avalo. I heard from one of Mr. Avalo's family members
9 before that.

10    I needed some more time to think about this, and I
11 asked Mr. Avalo to think about this a little bit more and to,
12 if possible, come up with a more sort of concrete plan as to
13 what he was going to do in terms of trying not to fall to
14 temptation to those things that had trapped him before.

15    Are we ready to proceed, counsel for the government,
16 counsel for the defense, and Mr. Avalo?

17    MR. MASIMORE: Yes, your Honor.

18    MR. GREENFIELD: Yes, your Honor.

19    THE COURT: Mr. Avalo, I'll start with you. Is there
20 anything that you'd like to say?

21    THE DEFENDANT: Thank you, first of all, for giving me
22 the opportunity to think things through and come up with a plan
23 for myself. One of the main things that I didn't do last time
24 was I didn't plan when I came out of prison last time. I
25 didn't plan what I wanted to do with myself and where I was

1    going in life.
2              I don't know if you received -- I sent you a letter
3    not too long ago.  I sent you another letter.  I have a copy.
4              THE COURT:  I'll take a look at it now.
5              MR. MASIMORE:  Yes, your Honor.
6              THE COURT:  Just one moment.
7              (Recess)
8              THE COURT:  I've taken a break.  I've read a letter
9    from Mr. Avalo, as well as a letter from the Doe Fund and a
10   letter from MS Builders signed by Maximo Sanchez, Jr., who is
11   the owner of MS Builders, which is a construction firm based in
12   New York City.  He's writing to confirm that whenever Mr. Avalo
13   is released, he has a job waiting for him to work as a laborer
14   Monday through Friday from 9:00 to 5:00.
15             Let me hear from you, Mr. Avalo.
16             THE DEFENDANT:  Like I was saying, your Honor, I
17   honestly thank you first for giving me the time to reiterate
18   myself and think about what it is that I want to do in life.
19             I know one of the main things that I need to do is
20   gain successful employment.  Once I have that and living within
21   my means, I'm able to put myself in a better circumstance and a
22   better situation for me to progress.
23             In order for me to do that, what I have planned is to
24   take myself back to night school, and working and night school
25   is going to leave me with a little bit of leisure time.  That's

1  going to leave me just enough time to associate with my family,
2  and that's what I need.
3        What I plan to do after this is, in time, open myself
4  my own business and give somebody else the opportunity that
5  somebody is giving me today, to work for myself and give
6  someone the opportunity to come work for me.
7        I know that my family means a lot to me.  My family is
8  very, very important to me, as you can see, and I'm important
9  to them.  And I know they understand that I no longer can be
10 supportive like I used to be before.
11       They understand that I might need some of their help
12 today.  They value my freedom more than they value for me to be
13 in jail.  I'm easier to get in contact with.  It's easier to
14 socialize for them, and I'm able to be there when they most
15 need me, whether it's emotionally or physically, and I'm
16 grateful for that.
17       I want to give myself the opportunity like some day
18 down the line, like I've said in the letter, a poster child.
19 I've taken this financial class in the facility.
20       One of the things that I didn't know was live within
21 my budget means.  Sometimes we overbudget ourselves.  I used to
22 overbudget myself because I always spread myself thin.  I don't
23 want to do that anymore.
24       I know that I have to take care of myself first in
25 order to be able to help somebody else down the line.  So I

know what needs to be done, and I'm planning on doing that as soon as I get released.

I know what I need to implement myself, and I'm working on that every day more and more, little by little to try to reach out as much as I can to my family.

Unfortunately, it's hard. During the conversation, you only get a certain amount of time to talk to people, and where I'm at right now, it's kind of hard for my family to come and visit me.

So I know that they understand where I lie at. They understand where I stand at today, and they know that I value my freedom more than I value anything else. I know that I cannot go back to my old ways. I know that I cannot go back.

I know that failure is something that happens easily. I can't get depressed at it. I have to keep steadily moving on. I have to keep continuing to move on. I know that if I'm working and something happens and this company breaks and goes broke, I know that I could find a job.

I don't know how often you read the newspaper, but I was getting paid $1,500 a week. That's $600, $700 after taxes every week in a 40-hour week.

If I can't live within those means -- that's about $2,400 a month. If I can't live within those means, then I don't know what I can do. I know that I can do that. I know that I can live within those means and help my family out as

1    much as I possibly can.

2           At the same time I have to understand that I have to

3    set a limitation for myself.  That's what I've come to the

4    conclusions to doing, limiting myself and knowing what needs to

5    be done.

6           THE COURT:  Thank you.

7           Anything else from the government?

8           MR. MASIMORE:  No, thank you, your Honor.

9           THE COURT:  Anything else from defense counsel?

10          MR. GREENFIELD:  While we were on the break, I got an

11   email from my office saying his father and brother were on the

12   way, but they got delayed because the way the docket kept

13   changing today, from 3:00 to 3:30, to 4:00.  I wanted you to

14   know that they intended to be here with him along with the rest

15   of the family that's here.

16          THE COURT:  Thank you.  First I'd like to commend you,

17   Mr. Avalo.  I've read the letter.  It seems that you definitely

18   put a lot of thought into this and a lot of thought into

19   actually coming up with a feasible, workable plan in thinking

20   about the sorts of misplaced values that may have led to you

21   finding yourself in this situation.

22          I have no doubt that this period of incarceration has

23   been harsh, as all periods of incarceration are harsh.  I'm

24   sure that it's been made more harsh by the loss of your mother

25   while you've been in custody, and I want to commend you for

1   thinking about that and actually having a plan, reaching out,
2   having someone who has written a letter indicating that he is
3   going to provide you with a job whenever you're released.
4              You've also submitted this letter from the Doe Fund
5   responding to your inquiry indicating that while they're unable
6   to give you a residential program directly from custody, it is
7   clear to me, based on the letters from your family, based on
8   the testimony from your family member, based on the people who
9   are here today and the people who are on their way, that you
10  will have a place to stay when you are released and you won't
11  need their residential program but that you will avail yourself
12  of their nonresidential program, as well as availing yourself
13  of the job opportunity you have with MS Builders.  So I want to
14  commend you for that.
15             Now, I still have to impose a sentence here, and I
16  know you understand that because of the nature of the crime
17  that was involved here and because of your criminal record.
18  Again, I did give a horizontal downward departure for your
19  criminal record, but obviously, the record is there.
20             You have done some pretty substantial time at least
21  once before.  The more recent arrest you didn't do much really
22  of any time.  But you did do substantial time before, and I am
23  going to have to impose some time here.
24             Having said that, again, I commend you for what you've
25  done while you've been in prison.  I commend your family,

1  again, for their strong support.

2      Even though your female family member -- I believe it
3  was your niece -- indicated at the time that she testified
4  before me that she wasn't very good at those sort of things,
5  she did a remarkable job and spoke from the heart, and it
6  certainly made an impact on me.  So I hope that you are willing
7  to continue with this plan.

8      I'm not sure what your expectations are today, but,
9  again, I'm going to have to impose some custody because of the
10 seriousness of the offense and your record.

11     But I hope that you will, to use your words and your
12 football analogy you put there, not consider this as a sack but
13 just to get another timeout, and hopefully this will be the
14 last timeout that you have, and there won't be any more
15 timeouts.

16     Again, in your football analogy in your letter, that
17 you will be in the end zone from now on on the positive side
18 and, as you said, to keep moving 10 yards at a time and take
19 things one step at a time.  So I am ready now to impose
20 sentence in this case.

21     What's the government's position on restitution and
22 forfeiture in this case?

23     MR. MASIMORE:  Your Honor, I believe there was
24 forfeiture as part of the plea agreement initially.  We'll
25 submit the forfeiture order after the proceeding if that's

1  okay.  The defendant had already agreed to it.  With respect to
2  restitution, we'll submit information.
3           THE COURT:  Okay.  I will impose the $200 special
4  assessment.  I will not impose a fine.
5           Again, before I go further, Mr. Avalo, are you
6  satisfied with your legal representation up to this point?
7           THE DEFENDANT:  Yes, sir.
8           MR. MASIMORE:  Your Honor, with respect to forfeiture,
9  I think what we agreed to was $75,000.  If the Court could
10 impose that orally as part of its sentence.  Then we'll provide
11 the written order.
12          THE COURT:  Is that correct, counsel, that Mr. Avalo
13 has agreed to $75,000 in forfeiture?
14          MR. GREENFIELD:  Yes, your Honor.
15          THE COURT:  Do you understand that, Mr. Avalo?
16          THE DEFENDANT:  Yes.
17          THE COURT:  So I'll impose a forfeiture amount of
18 $75,000.  Again, I will not impose a fine.  Regarding the term
19 of supervised release, I will impose a term of three years'
20 supervised release on each count to run concurrently.
21          I'll impose the mandatory conditions of supervised
22 release.  Mr. Avalo shall not commit another federal, state, or
23 local crime; that he shall not illegally possess a controlled
24 substance.  He shall not possess a firearm or destructive
25 device.

1           I'll suspend the mandatory drug testing condition.  He
2   shall cooperate in the collection of DNA as directed by the
3   probation officer.
4           I'll impose the standard conditions of supervision,
5   along with the following special conditions:  He shall provide
6   the probation officer with access to any requested financial
7   information.
8           He shall not incur new credit charges or open
9   additional lines of credit without the approval of the
10  probation officer unless he is in compliance with the
11  installment payment schedule.
12          He should participate in a program approved by the
13  United States Probation Office which program may include
14  testing to determine whether he has reverted to using drugs or
15  alcohol.
16          I authorize the release of available drug treatment
17  evaluations and reports to the substance-abuse
18  treatment provider as approved by the probation officer.
19          He'll be required to contribute to the costs of
20  services rendered in an amount determined by the probation
21  officer based on ability to pay or the availability of
22  third-party payment.
23          I'll also impose a search condition that he shall
24  submit his person, residence, place of business, vehicle, or
25  any other premises under his control to a search on the basis

1    that the probation officer has a reasonable belief that

2    contraband and evidence of a violation may be found.

3            The search must be conducted in a reasonable time and

4    in a reasonable manner.  Failure to submit to a search may be

5    grounds for a revocation.  He shall inform any other residents

6    that the premises may be subject to search pursuant this

7    condition.

8            He should report to the probation officer within 72

9    hours after being released from custody.  He shall supervised

10   in the district of residence.

11           As I indicated before, the guideline range was 84 to

12   105 months.  I already imposed a horizontal downward departure

13   from criminal history category V to criminal history category

14   IV resulting in a guideline range of 70 to 84 months.  I

15   recognize I have the ability to further downwardly depart, and

16   I have the ability to vary from the guidelines.

17           I do believe that it is appropriate to vary from the

18   guidelines based on the factors considered -- all of the

19   factors that I've considered and 18 U.S. Code, Section 3553,

20   including his strong family ties.

21           The need for deterrence is not as strong as I

22   initially thought given Mr. Avalo's plan, given his employment

23   opportunity that is waiting for him when he is released from

24   custody.

25           I find that also the conditions of his incarceration,

1   which are always harsh, have been made somewhat more harsh by
2   the fact that his mother has died while he's been in custody,
3   and I do believe him that that has served as a moment of
4   clarity for him and helped to awaken in him those positive
5   things about him that have always been there but given him a
6   desire to focus on those.
7         I have considered very strongly the letters from his
8   family and friends, as well as the testimony of his niece and
9   the presence of all of his family members in all of the court
10  proceedings, and I think it's appropriate to vary from the
11  guidelines.
12        I will impose a term of custody of 49 months.
13        Are there any open counts, counsel for the government?
14        MR. MASIMORE:  To the extent there are, your Honor, at
15  this time the government moves to dismiss them as to this
16  defendant.
17        THE COURT:  That is granted.
18        Mr. Avalo, you have a statutory right to appeal.
19  There are time limits on your ability to appeal.  If you wish
20  to file an appeal, you should notify your attorney immediately.
21  If you cannot afford to hire an attorney to help you prosecute
22  the appeal, the Court would give you an attorney for free.
23        Do you understand?
24        THE DEFENDANT:  Yes, your Honor.
25        THE COURT:  Again, Mr. Avalo, I wish you the best of

1  luck.  I really do hope that you will stick with this plan
2  because your family needs you.  And, more importantly, you need
3  to be there for yourself.  So I wish you the best of luck.
4          Again, I thank your family for their letters, their
5  testimony, all of their support.  And you may tell your father
6  and -- is it the brother who is on the way?
7          MR. GREENFIELD:  Yes.
8          THE COURT:  -- that I have considered what they have
9  said, certainly what your father has said in the letter.  They
10 shouldn't feel bad that they didn't make it here in time.  I am
11 considering them as if they were here as well because they have
12 been here throughout the proceedings.
13         Anything else from the government?
14         MR. MASIMORE:  No, your Honor.
15         THE COURT:  Anything else from the defense?
16         MR. GREENFIELD:  No, your Honor.
17         THE COURT:  Thank you.
18         (Adjourned)